522-0404 W.C. Holland Trucking, Appellant by Austin Moore v. The Illinois Workers' Compensation Comm'n, Guy Martin, Appellee by Nicholas Sciro. Mr. Moore, you may proceed. Thank you. Good morning, your honors. May I please the court? My name is Austin Moore, and I appear on behalf of Holland Trucking, the plaintiff employer in this case. The plaintiff disputes the findings of the Illinois Workers' Compensation Commission, which found that the defendant employee suffered a low back injury that arose out of and in the employment with the employer on May 15, 2017, and that the defendant's current condition of ill-being is causally related to that accident. Of course, your honors, we are aware of the standard in this case, but believe the evidence compels an opposite conclusion than that which found. The commissioner relied too strongly on the defendant's testimony that he gave regarding his notice about the issues involving the suspension and seat in his truck. The commissioner placed weight upon the idea that a lack of written documentation of seat or suspension issues could be the cause of these problems. However, the commission, or I should say the defendant, could not give a date, a week, a month, a year when these problems allegedly arose. In fact, there are no reports we have. Out of the 200 reports we submitted into evidence, there are no reports where a defendant complained of issues with his seat or his suspension. He complained. He complained of issues involving his air conditioning unit, so we knew he did fill out these reports and he did complain if there were issues with these trucks. We have nothing, no reports showing that he complained of issues involving his seats or his suspension, or the suspensions in his truck. Didn't the commission find that there were some gaps in the dates of the reports made by the claimant here? That's correct, Your Honor. There was a gap of several months, which I believe were calculated to be about 80 reports. Now, the defendant testified that these reports may have been lost. However, there is no basis for him to believe these reports were lost because he submitted these reports complaining of these issues involving his seats and suspension. If he's alleging that they were lost, then there is no evidence showing that we did lose these reports, that these reports were lost. If these reports existed, they would have been submitted into evidence, but there are no reports. The absence... What would he have done with them if he did not submit them? Well, Your Honor, the witness for the plaintiff, the employer, testified that on certain occasions, of course, even though they're supposed to fill out these reports, there are cases where the employees do not fill out these reports and don't get submitted. So, our position is these reports, if they exist, don't say anything about suspension or seat issues, but really, they probably don't even exist. He probably just didn't fill them out, never turned them in like he was supposed to. There are no, and certainly no reports fill out involving issues with his seat or suspension, because there were no issues. These are newer trucks, which, as the employer's witness, the plaintiff's witness, Mr. Hogue, testified, these seats, there were very little bottoming out or bouncing around. If they did then those trucks would be removed immediately, fixed, and returned. So, if defendant's complaining of these defects, and there is a report out there that says he had an issue, then that truck would have been fixed immediately, and he would have been back out there in a new truck. So, I believe it's beyond believable that all these reports have, these supposedly missing reports have allegations or reports of issues with his truck. These were new trucks. Mr. Moore, did he relate, he had any personal conversations with people at Holland or in supervision at Holland about these seats? I believe, you know, the commission mentioned he gave verbal notice. Mr. Hogue, who testified for the employer, did not testify that he ever spoke to the defendant, the employee about this, about this issue. But to be quite honest, I'm not sure if he spoke to anybody at the notice, but the notice in this case would have been these reports. These reports don't exist. And of course, the commission relied upon or made note of Mr. Hogue's testimony that, you know, some of these seats still bottomed out. Well, the bottoming out is a defect, not a feature of the truck. And like I said earlier, if there had been an issue, the truck would have been placed in a new truck. But of course, we have no reports here to show that. Right. Mr. Moore, and that would relate to even if he's in the middle of his Danville to Cincinnati trip and he's made a stop, if he reported it verbally or otherwise, they'd switch out that tractor at that location or would they wait until he got back? So how these reports work is when a driver, such as the defendant in this case, reaches a new location, he fills out a report, leaves a copy for the next driver. And if there is nothing wrong with the truck, then they can see there's nothing wrong and they can continue on their way. In this case, I don't think there's any evidence that he stopped at a location in, you know, Cincinnati or Danville or wherever, fill out a report or communicate to anybody that there was an issue with his truck. Because if there had been an issue with his truck, he would have gone beyond the verbal and he would have filled out a report and the report would have been submitted to the repair shop or repair shop, whatever they call it, to fix the truck. So, you know, so there's no evidence here that there are these missing reports. Number one exists and two, that they complain of any defects. I mean, there's one report that has a defect and it somehow got misplaced. Well, there's one defect and one truck and he submitted a report. It somehow got lost and then he got a new truck and was on his way. I just don't find, I just don't, I disagree with the commission that there were all these defects with his trucks that, you know, caused them to bottom out, to bounce them all around the truck and exacerbate a low back condition. Did his job entail anything other than sitting and driving his truck that may have caused additional discomfort and ultimate injury? Yes, Your Honor, in terms of there were other, there were other job duties, which... Jobs reported on these sheets, DVR sheets, whatever they were called. Are those, is that job related in some way that when I twisted something happened? No, Your Honor. In terms of the inspection reports, those reports are specific to the vehicles. In terms of his job duties, you know, there were, I would say, three primary doctors in this case. Dr. McCaskill, who is a chiropractor and, you know, I have a chiropractor in my family, no disrespect to chiropractors, but compared, you know, comparing a chiropractor to a surgeon such as Dr. Van Fleet, the plaintiff employer's doctor, there just is no, the credibility between the two doctors is significant. And, you know, so really it comes down to here, you know, I don't believe there really should have been any weight placed upon Dr. McCaskill's opinions, which Dr. McCaskill said he would consider deferring to a surgeon for causation, but really it comes down to Dr. Sasso and Dr. Van Fleet. Dr. Sasso is a surgeon, like Dr. Van Fleet, but Dr. Sasso did not have as much information as Dr. Van Fleet. I mean, the commission notes in their decision that Dr. Sasso obtained a history from the petitioner, who Dr. Sasso stated that he did not know the defendant's specific job duties. He did not know the details of the truck, the routes he drove, the items he was required to load and unload, or how much they weighed. He did not have a written job description. All he really said was, you know, I've treated long haul truckers before, which is okay. You know, I guess there is some similarity between long haul truckers, but I don't think you can generalize that what the defendant employee did for Holland is the same as what someone did for SIA or another trucking company. So Dr. Sasso's opinion is strictly based on, well, this guy is dealing with a back issue, and there's no dispute there. There's no dispute there's a back issue. Dr. Van Fleet admitted so himself, but Dr. Van Fleet reviewed a written job description. He talked to the defendant. He was a truck driver himself, which I know the commission downplayed quite a bit, but I do want to address real quick here, and it really wasn't specifically mentioned in the commission decision, but I know defendant's attorney has mentioned it a few times that Dr. Van Fleet said, well, there's a 1% chance that the job duties exacerbated his underlying condition. But if you look at the overall context of what he was saying, I mean, it's like asking a scientist, will a meteor strike the earth? Well, no. Well, is there a 1% chance? Well, sure, there's a 1% chance. There's a chance for anything to happen. But in this case, and regardless, even if Dr. Van Fleet was serious about a 1% chance, that's not a reasonable degree of medical certainty. That's not beyond, he wasn't serious, and two, that's not the correct, it's not a standard. He wasn't, so really Dr. Van Fleet's opinion is this did not exacerbate underlying conditions. This guy has significant low back issues he's had forever. It's part of the natural aging process, and it's not related. Dr. Van Fleet didn't say, at least not that I recall, that his job was related to just driving that truck. He knew that there was more to it, correct, as did Dr. Sasso. Sasso knew that there was more than just driving a truck, didn't he? Correct. Dr. Van Fleet had a copy of the written job description provided by Holland, which Dr. Sasso did not. Dr. Sasso, it says here in the commission decision, he obtained a history from a petitioner, but from his, like I said earlier, from his testimony, he really did not know anything about the job. He knew the defendant drove a truck. He knew he had to load and unload the truck, but he really did not know everything that went into it. Dr. Van Fleet had that added element, which was the written job description. With the written job description, did it include the weights of the dock plates and the weights of some of the freight and how the freight might shift during the course of the travel? Your Honor, I'm not 100% sure it had the exact weight. It had the heavy lifting requirements, lifting requirements to perform the job, what he was required to do. But again, that's more than what we know of Dr. Sasso. Dr. Sasso, while I know the literature on long-haul truckers, I know I've had to treat long-haul truckers before. Well, okay, but this is a very specific case to this very specific individual. For a certain company, Holland. Long-haul trucking was a lot different than getting appliances across town to residential or even commercial businesses, correct? Correct, Your Honor. That's fair. However, I think Dr. Van Fleet, in terms of his experience of a truck, that has to do more with driving the truck and less to do with loading. I know the weight requirements and unloading of the truck and what went into that. Dr. Van Fleet, he had two different opinions, one based on the driving of the truck and whether these moving seats had anything to do with it or not. And just to conclude, Your Honor, I see the red lights on. The employer prays that this court find the Illinois Workers' Compensation Commission's finding that the defendant employee's injuries arose out of in the course of employment and causally related to his job duties was against the manifest weight of the evidence and that the certain court's order affirming that decision was erroneous. Thank you. Thank you. Thank you, Mr. Moore. Mr. Schiro, you may respond. Thank you and good morning, Your Honors. May it please the court, counsel. Last topic first, the testimony of Dr. Van Fleet is not credible as the commission found for two reasons. Number one, in his written report, Dr. Van Fleet indicated that the petitioner's work was not causally related to work nor exacerbated. However, he testified that the work could certainly could have exacerbated the degenerative disc disease, but wasn't so sure as the spinal stenosis. So it could be argued that Dr. Van Fleet, while his opinions are not the topic of the driver vehicle inspection reports that the respondent appellant brings up. First of all, I do believe they are defective. The commission thought so. 86 of those reports were missing and on any one of those, the claimant could have made the complaint. Furthermore, the driver inspection reports or lack thereof are only one factor in determining whether any defect involving the trucks was a causal factor. The other factors are the physical requirements of the job and that has been laid out in the brief. I understand now that the respondent doesn't like what their witness Mr. Hoag stated that even the newer trucks could bottom out on occasion. Also, there is no evidence that the petitioner continued driving a defective truck. Once he got in the truck, if he identified a defect, he couldn't report it until he was either at the next stop or already back. So he would essentially have to drive that vehicle for the day and then it would be changed out for a newer one until his truck could be serviced and put back in the field. It was the testimony of the petitioner that was found driving. He would feel the bottom out which would cause the lower back pain followed by the radiation down his lower extremities. A lot of the argument today I believe is an attempt to re-weigh the evidence which is not proper at this point. The commission decided to accept Dr. Sasso over Dr. Van Fleet and that is uniquely the commission's function. There is some evidence supporting the decision so it should be affirmed. Well, when did the numbness or the I guess maybe the tingling first and then the numbness in his feet happen? Was that later? That was about the April date? I believe so. Justice, I think the testimony is that he had had symptoms of a progressive nature a year out before his visit with the chiropractor McCaskill on May the 15th of 2017 when he just reported that the symptoms were getting worse. I believe they were getting worse as he worked to the point where he was having the numbness and couldn't literally move. I think that was all part of the progressive nature that finally caused him to go seek help from the chiropractor initially. Any other questions? I will rest on my brief but I will field any additional questions that your honors may have. I don't see that we do. Thank you, Mr. Schiro. Mr. Moore, you may reply. Thank you. Just to address real quick what Mr. Schiro argued, which was that we are trying to reweigh the evidence. I think here the manifest weight finding that there is enough evidence that can compel an opposite conclusion. That's a standard. I think what he argued here today shows that the evidence is strong enough to compel his courts to find an opposite conclusion. Even though Dr. Van Fleet said that, sure, job duties could exacerbate an underlying condition, they did not in this case. He was more familiar with the job duties. Dr. Sasso denied knowing anything other than that he had treated long haul truckers and that petitioner that the employee had underlying issues. We don't believe Dr. Sasso is really that credible. Dr. Van Fleet is credible. He's more credible. We are asking that this court will return the findings of the Illinois Workers' Compensation Commission. But could indicates that the doctor said it might have. It could have. So shouldn't that have been considered? Isn't that what the commission did? I think he's saying it could. Anything could happen. Any situation, could cause an issue. In this case, it could have. He reviewed all the records. He reviewed all the films. He reviewed the written job description. He said it did not cause or exacerbate an underlying condition. In terms of could, did, I don't think that really means much. Did he indicate any treatment? Does Dr. Van Fleet indicate any sort of treatment that would assist the claimant? Yes, Your Honor. Dr. Van Fleet did agree that he would need, that treatment was reasonable. But again, there's no dispute this guy had underlying issues. The position is these underlying conditions were not exacerbated by his job. So yeah, Dr. Van Fleet did agree with treatment, but not that it was related to his job. How long had he been truck driving by the time he saw Dr. Van Fleet? I believe he had been driving for about 20 years. And he was not, not to be disrespectful, but he certainly was not an athletic-like person. Isn't that correct? I believe that's correct. All right. So he's driving a truck. He's hauling the truck when he loads and unloads. And he has made verbal complaints that we're aware of, that those air seats don't always work. So what else do we need? I mean, based on his testimony, I mean, the commission did not hear his testimony live, of course. I believe he gave verbal testimony, or I believe his testimony that he gave verbal notice was credible, but that's all we have. And of course the written notice, which we don't have. Well, one last question about that. Whose possession should that written notice be in? The company, the claimant, the truck, does it stay in a locker in the truck? Where does it stay? I believe there are multiple copies. One stays in the truck, and then one goes to, if needed, the repair shop, and then one for the employer. Okay, but the employee doesn't actually retain a copy of it? I don't believe so, Your Honor. So if these 86 or 87 reports are missing, the truck is Holland's, and it goes to Holland, and the repair shop is Holland's, probably, or designated by Holland. So who's most responsible for the recovery or the reports that are filed? Your Honor, I believe it'd be the employer who'd have a copy of that, but unfortunately we just have the reports we have, which indicates to me that those reports don't exist. That's my position. Okay, very good. Any other questions? Okay, very good. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement, and a written disposition shall issue.